ZACHARY J. ALINDER (State Bar No. 209009)
E-Mail:    *zalinder@sideman.com*
ERICA BRAND PORTNOY (State Bar No. 244923)
E-Mail:    *eportnoy@sideman.com*
LYNDSEY C. HEATON (State Bar No. 262883)
E-Mail:    *lheaton@sideman.com*
SIDEMAN & BANCROFT LLP
One Embarcadero Center, Twenty-Second Floor
San Francisco, California 94111-3711
Telephone:   (415) 392-1960
Facsimile:   (415) 392-0827

Attorneys for Plaintiff
FORD MOTOR COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FORD MOTOR COMPANY, a Delaware Corporation,<br><br>Plaintiff,<br><br>v.<br><br>CROV INC. d/b/a crov.com, a Delaware Corporation; SUNWARD LOGISTICS USA LLC, a California Limited Liability Company; QINGDAO HAIRUNKAIYUAN AUTO PARTS CO., LTD., d/b/a www.freedream4x4.com and also Qingdao Yuanxi Auto Parts Co., LTD., a Chinese business entity; FD-ALL TOGETHER AUTOMOTIVE INC., a California Corporation; and, DOES 1 through 30 inclusive,<br><br>Defendants. | Case No. 2:22-CV-05552<br><br>**COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>**1. FEDERAL TRADEMARK INFRINGEMENT;**<br>**2. FEDERAL TRADEMARK COUNTERFEITING; and,**<br>**3. FEDERAL UNFAIR COMPETITION.**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Ford Motor Company ("Ford" or "Plaintiff") hereby complains and alleges against Defendants Crov Inc. ("Crov"), Sunward Logistics USA LLC ("Sunward"), Qingdao Hairunkaiyuan Auto Parts Co., Ltd. ("QH"), FD-All Together Automotive Inc. ("FD"), and DOES 1 through 30 inclusive, (collectively referred to as "Defendants") as follows:

## INTRODUCTION

1. With the assistance of state and federal law enforcement, Ford has recently uncovered a significant global counterfeiting operation, where Defendants manufacture, import, market, sell, and distribute a massive number of counterfeit "Ford"-branded truck grilles and other counterfeit "Ford"-branded parts and accessories to other third party resellers and to consumers directly, primarily through their own websites and through online marketplaces, like Amazon.

2. Over the past two years, raids on Defendants' warehouses — resulting in the seizure of thousands of counterfeit products that alone would be worth millions of dollars if they were genuine — have confirmed the significant scale and brazen nature of Defendants' unlawful and infringing conduct:

   
   

3. Defendants' counterfeiting operations have resulted in consumer confusion and have harmed Ford's business and the consumer goodwill associated with the Ford brand. Defendants, of course, also profited tremendously from their illegal conduct, at the expense of Ford and end customers duped into buying cut-rate counterfeit replica products, parts, and accessories.

4. Despite the repeated raids and seizures, Defendants continue to advertise and offer for sale counterfeit "Ford"-branded products on their websites, highlighting the extreme willfulness of the unlawful and infringing conduct and the intent of the Defendants to continue unabated until forced to stop:



5. Ford brings this Action to put a stop to Defendants' unlawful and infringing conduct and to recover fully for the monetary damages and the significant harm to Ford, and its brand and reputation, caused by Defendants.

## PARTIES

6. Plaintiff Ford Motor Company is a Delaware corporation with its principal place of business in Dearborn, Michigan.

7. Upon information and belief, Defendant Crov is a Delaware corporation with its principal place of business in San Bernardino County, CA, within this District.

8. Upon information and belief, Defendant Sunward is a California limited liability company with its principal place of business in Los Angeles County, within this District.

9. Upon information and belief, Defendant QH is a Chinese Business entity with its principal place of business in Qingdao City, China, but with significant operations and business in this District as detailed further herein. Upon information and belief, in addition to doing business through the other Defendants, QH does business through multiple interactive websites, including at least www.freedream4x4.com, and also does business under the business name Qingdao Yuanxi Auto Parts Co., LTD. Ford is further informed and believes, and thereon alleges, that QH has imported counterfeit "Ford"-branded products, as alleged in this Complaint, into the United States through the Port of Los Angeles, and that QH maintains business operations in Walnut, California and City of Industry, California, both in Los Angeles County, among other things, to enable QH to distribute these counterfeit products, including but not limited to the products alleged in this Complaint, into the United States.

10. Upon information and belief, Defendant FD is a California corporation with its principal place of business in Los Angeles County, within this District.

11. Ford is further informed and believes, and thereon alleges, that there are certain individuals involved with each Defendant entity, who are the moving, active, and conscious forces behind Defendants' infringement, and that these individuals personally aided, abetted, participated in, authorized, and/or had the ability and right to supervise, direct, and control the tortious and infringing activities of Defendants that are alleged herein. These individuals, other additional unknown members of the infringing distribution chain, and additional co-conspirators are therefore referred to herein as DOES 1 through 30.

12. The true names and capacities, whether individual, corporate, associate, or otherwise, of the Defendants named herein as DOES 1 through 30, inclusive, are unknown to Ford at this time, who, therefore, sues said Defendants by such fictitious names. Ford will amend this Complaint to reflect the true names and capacities of these DOE Defendants when the same shall have been fully and finally ascertained.

13. Ford is informed and believes, and thereon alleges, that each of the Defendants designated herein as a DOE is legally responsible, in some manner, for the events and happenings in this Complaint, and legally caused damages to Ford, as herein alleged.

14. Ford is informed and believes, and thereon alleges, that at all times relevant to this action, each Defendant, including those fictitiously named Defendants, was the agent, servant, employee, partner, joint venturer, accomplice, conspirator, alter ego, and/or surety of the other Defendants and was acting within the scope of that agency, employment, partnership, venture, conspiracy, or suretyship with the knowledge and consent or ratification of each of the other Defendants in doing the unlawful activities alleged in this Complaint.

## JURISDICTION AND VENUE

15. This Action arises under the Lanham Act, 28 U.S.C. §§ 1051 *et seq.*, and this Court has subject matter jurisdiction over this Action under 28 U.S.C. §§ 1331 and 1338.

16. This Court has personal jurisdiction over Defendants because they are either located and reside in this District, or have engaged in business activities in this District, and directed business activities at this District, including but not limited to the counterfeiting and otherwise unlawful and infringing business activities specifically alleged in this Complaint.

17. Venue is also proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Ford's claims occurred in this District.

## FACTUAL ALLEGATIONS

### Ford's Business

18. Ford Motor Company (NYSE: F) is a global company based in Dearborn, Michigan, that is committed to helping build a better world, where every person is free to move and pursue their dreams. Ford designs, manufactures, markets, and services a full line of connected, increasingly electrified passenger and commercial vehicles, including Ford trucks, utility vehicles, vans and cars, and Lincoln luxury vehicles, along with a full array of genuine Ford-branded products and accessories for these vehicles (the "products"). Ford employs approximately 184,000 people worldwide.

19. Ford manufactures and sells its genuine products, bearing Ford's distinctive and globally-recognized trademarks. Ford's reputation for high quality, cutting-edge style, and reliability, among other things, is a result of Ford's significant investment in research, design, development, and manufacturing, as well as its meticulous quality control standards. Further, Ford has invested substantial effort and resources, including millions of dollars, to promote its trademarks and, as a result, consumers around the world recognize and rely upon Ford's trademarks as signifiers of Ford's high quality products and services.

20. Ford distributes and sells genuine products to consumers through its authorized dealer network, through its own website, as well as through authorized

online resellers and brick-and-mortar retailers throughout the United States and globally.

### Ford's Trademarks

21.    Ford's trademarks are critical to its business. Ford is the owner of, and has widely promoted, several trademarks which have earned substantial fame and considerable goodwill among the public. Indeed, in selling Ford-branded vehicles for well over 100 years utilizing the Ford Marks, the Ford Marks have attained among the highest recognition levels and fame of any trademarks worldwide. Ford has used its trademarks on and in association with its entire line of vehicles, as well as all related genuine Ford products and services.

22.    Ford has caused a number of trademarks (collectively, the "Ford Marks") to be registered on the Principal Register of the U.S. Patent and Trademark Office in connection with a range of products and services, and Ford owns all rights, title, and interest in its federal trademark registrations, including but not limited to:

| U.S. Reg. No. | Mark | Reg. Date | Relevant Goods |
|---|---|---|---|
| 74,530 | *Ford* (script logo) | July 20, 1909 | Automobiles and their parts |
| 643,185 | **FORD** | March 26, 1957 | Passenger cars and trucks |
| 1,399,080 | Ford oval logo | July 1, 1986 | Parts and components for automotive vehicles |
| 1,400,808 | Ford oval logo | May 15, 1985 | Parts and components for automotive vehicles |

| U.S. Reg. No. | Mark | Reg. Date | Relevant Goods |
|---|---|---|---|
| 1,997,203 | (Ford oval logo) | Aug. 27, 1996 | Auto parts and accessories |
| 2,018,005 | **FORD** | Nov. 19, 1996 | Automotive accessories, including badges for vehicles |
| 2,304,426 | **FORD** | Dec. 28, 1999 | Electric signs |
| 4,109,043 | **RAPTOR** | March 6, 2012 | Pick-up trucks |

23. The Ford Marks are well-known, valid, and famous within the meaning of the Lanham Act. The Ford Marks have been used exclusively and continuously by Ford, including in interstate commerce. Certain of the Ford Marks above have been in use by Ford as early as the late nineteenth and early twentieth centuries. Not surprisingly, these marks (and many more Ford trademarks) are incontestable pursuant to 15 U.S.C. § 1065.

24. As alleged in more detail above, the Ford Marks are symbols of Ford's quality, reputation, and goodwill. The Ford Marks have never been abandoned and have never been assigned or licensed to Defendants. Ford never consented to or authorized Defendants' infringements alleged herein. Indeed, Defendants knew, or reasonably should have known, that Ford owns the Ford Marks, including but not limited to the intellectual property and goodwill associated with those marks, but Defendants chose to infringe (and to continue to infringe) the Ford Marks repeatedly despite actual notice and knowledge that doing so was, and is, unlawful.

**Defendants' Sale of Counterfeit and Infringing Ford Products**

25. For at least two years and likely stretching back even further, Defendants have advertised, distributed, offered to sell, and sold, untold thousands of counterfeit "Ford"-branded products to consumers and third party resellers, bearing counterfeit and/or infringing copies of the Ford Marks (the "counterfeit

products").

26. Ford first became aware of Defendants' massive counterfeit operation at the November 2019 SEMA-AAPEX parts trade show in Las Vegas, Nevada. At that trade show, Defendant Crov circulated a catalog that offered for sale numerous different counterfeit "Ford" grilles.

27. Ford made test buys from Crov in 2019 and 2020. These test buys from Crov arrived, and showed that the counterfeit products were initially sold by Defendant QH and then shipped by Defendant Sunward. These shipments went first through Sunward's New Jersey warehouse, and a second shipment went through its warehouse in Bell, CA, within this District.

28. In November 2020, law enforcement effected a search warrant at Sunward's New Jersey warehouse, leading to the seizure of nearly 4,000 counterfeit grilles, along with over 5,000 F and R letters that are used in the grilles to replicate or colorably imitate the Ford Marks. Like here, counterfeiters will often separate the grille from the letters necessary to complete the counterfeit trademark in an attempt to evade detection and seizure of products by U.S. Customs, which further establishes knowing and willful intent in infringing the Ford Marks. 527 counterfeit spark/glow plugs, ignition coils, and emblems were seized at the same time:









29. Next, in May 2021, law enforcement initiated a site inspection of Sunward's Bell, California warehouse and found nine additional counterfeit Ford Raptor grilles. More importantly, the site inspection revealed that more counterfeit product was stored at a different nearby warehouse, owned by Defendant FD in El Monte, California.

30. Law enforcement proceeded to the warehouse owned by Defendant FD in El Monte, California, within this District, where law enforcement found numerous U-Haul trucks and a warehouse full of counterfeit products, seizing an additional over 580 counterfeit "Ford"-branded grilles and well over 1800 F and R letters used again in the grilles to replicate, colorably imitate, and counterfeit the Ford Marks:




31. The above-referenced counterfeit products seized at these three facilities alone would be valued at approximately $2.5 million dollars, if they were genuine Ford products.

32. As the above images show, the counterfeit and infringing products contain spurious versions of the Ford Marks, that are identical to or substantially

indistinguishable from the Ford Marks registered with the U.S. Patent and Trademark Office.  The counterfeit and infringing products were, and are, of substantially different and lower quality than Ford's genuine high quality products.  Further, Defendants' unlawful conduct alleged herein was either knowing and intentional, or was undertaken with willful blindness to the counterfeit and infringing nature of these products.  Further, Defendants also knew or should have known that their sales of these counterfeit and infringing products were likely to, and did actually, cause significant consumer confusion, as their customers and the consuming public in general, initially and post-sale, were led to believe that the counterfeit and infringing products originated from, and/or were approved, endorsed, or authorized by, Ford.

33.   The harm to Ford's brand and goodwill caused by Defendants' conduct is ongoing, due not only to the inferior quality of the counterfeit "Ford"-branded counterfeits sold by Defendants, but also due to Defendants continued efforts to market, sell, and traffick in these counterfeit and infringing "Ford"-branded products.

34.   Indeed, in December 2021, a sales representative for QH, associated with www.freedream4x4.com, sent out an offer to sell newly-developed counterfeit "Ford" Raptor grilles, noting that some of the inventory was already in the U.S.  Upon engaging with the QH sales representative, Ford was able to purchase these counterfeit grilles from QH directly.  The counterfeit grille shipments showed QH as the shipper, and related documentation showed involvement of warehouses maintained in Houston, as well as Walnut, California and City of Industry, California, both within this District.  Showing QH's knowledge and intent to willfully infringe and counterfeit the Ford Marks, and to avoid a customs seizure, the counterfeit grilles that were purchased came missing the F letter in "FORD," which were then supplied in a separate shipment:



35. Accordingly, Ford has been, and continues to be, damaged by Defendants' infringements, counterfeiting, and unfair competition, including by suffering irreparable harm through the diminution of trust and goodwill among Ford consumers and members of the general consuming public and the trade. Ford has no adequate remedy at law. As a result of Defendants' infringement and counterfeiting of the Ford Marks, Ford is entitled to an injunction, and an order of destruction of all of Defendants' infringing and counterfeit products.

## FIRST CLAIM FOR RELIEF

*Federal Trademark Infringement - 15 U.S.C. § 1114(1)(a)*

**Against All Defendants**

36. Ford incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

37. Ford owns established trademark rights in the Ford Marks, which are federally registered in the United States. The registrations for the Ford Marks are valid and constitute prima facie evidence of the validity of the Ford Marks, many of which are incontestable.

38. The Ford Marks are distinctive and/or have acquired distinctiveness, and serve as source-identifiers for Ford's high quality products.

39. Defendants knew or had reason to know of the Ford Marks and Ford's rights to the exclusive use of the same.

40. Nevertheless, Defendants used, and are continuing to use, marks that are identical or confusingly similar to the Ford Marks in connection with the sale, offering for sale, distribution, or advertising of products in interstate commerce, in a manner that has, and is likely to continue to, cause confusion, mistake, or to deceive, and to diminish the value of the Ford brand.

41. Defendants are not, and have never been, authorized by Ford to use the Ford Marks on or in connection with any goods.

42. Defendants' actions have caused, and are likely to continue to cause confusion, mistake, and deception as to the origin, source, sponsorship, approval, and/or affiliation of Defendants' products with Ford's genuine products.

43. Defendants' unlawful conduct, alleged herein, is willful, deliberate, intentional, and in bad faith, or at a minimum willfully blind and with reckless disregard for the harm Defendants caused, constituting exceptional circumstances under the Lanham Act.

44. Defendants' unauthorized use of the Ford Marks therefore constitutes willful trademark infringement of the Ford Marks in violation of the Lanham Act, 15 U.S.C. § 1114(1)(a), damaging Ford in an amount to be proven at trial.

45. Defendants' infringing conduct has directly and proximately caused substantial, irreparable injury to Ford and to the business and goodwill represented by the Ford Marks, and unless enjoined will continue to do so, leaving Ford without an adequate remedy at law.

### SECOND CLAIM FOR RELIEF

*Federal Trademark Counterfeiting - 15 U.S.C. § 1114(1)(b)*

**Against All Defendants**

46. Ford incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

47. Defendants have publicly advertised, sold, offered to sell, and distributed counterfeit Ford products in interstate commerce in direct competition with genuine Ford products and without authorization or consent to use the Ford Marks.

48. Defendants' products reproduce, counterfeit, copy, and colorably imitate the Ford Marks and/or display a spurious designation that is identical with, or substantially indistinguishable from, the Ford Marks. Defendants' reproductions, counterfeits, copies, and colorable imitations of the Ford Marks are used in connection with the sale or offering for sale of Defendants' products and have caused and will continue to cause consumer confusion, mistake, or deception.

49. Defendants knew or had reason to know of the Ford Marks and Ford's rights to the exclusive use of the same and their actions were conducted with complete disregard of Ford's rights. Accordingly, Defendants' actions constitute willful counterfeiting of the Ford Marks in violation of the Lanham Act, 15 U.S.C. § 1114(1)(b), entitling Ford to treble damages and/or enhanced statutory damages under 15 U.S.C. §§ 1117(b) and (c).

50. Defendants' unlawful conduct, alleged herein, is willful, deliberate, intentional, and in bad faith, or at a minimum willfully blind and with reckless disregard for the harm Defendants caused, constituting exceptional circumstances under the Lanham Act.

51. Defendants' conduct has directly and proximately caused Ford to suffer damage to its business, to the valuable Ford Marks, and other damages in an amount to be proved at trial.

52. Defendants' actions described above, including its unauthorized and misleading use of the Ford Marks, and/or counterfeit versions thereof, in commerce have caused substantial and irreparable injury to Ford and to the business and goodwill represented by the Ford Marks, thereby leaving Ford without an adequate remedy at law.

## THIRD CLAIM FOR RELIEF

*Federal Unfair Competition - 15 U.S.C. § 1125(a)*

**Against All Defendants**

53. Ford incorporates by reference each of the allegations in the preceding paragraphs of this Complaint as though fully set forth herein.

54. Defendants offer for sale and sell infringing products that are designed to appear to be authentic Ford products, using the Ford Marks. Defendants' unauthorized use of the Ford Marks is likely to cause confusion, deceive, and mislead the consuming public into believing that there is some affiliation, connection, or association between Defendants and Ford and is likely to cause confusion, mistake, or deception as to the origin, source, sponsorship, authorization, approval, or affiliation of Defendants' products.

55. Defendants' actions, including the unauthorized use of the Ford Marks in commerce through their online stores, catalogs, and other offers for sale, constitute false designation of origin, false or misleading descriptions of fact, and false or misleading representations of fact, which are likely to cause, and have caused, confusion, mistake, and deception as to Defendants' counterfeit and infringing products' association or affiliation with Ford, or lack thereof, as well as to the origin, source, and sponsorship of Defendants' counterfeit and infringing products, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

56. Defendants' conduct has directly and proximately caused Ford to suffer damage to its business, to the valuable Ford Marks, and other damages in an amount to be proved at trial.

57. Defendants' unlawful conduct, alleged herein, is willful, deliberate, intentional, and in bad faith, or at a minimum willfully blind and with reckless disregard for the harm Defendants caused, constituting exceptional circumstances under the Lanham Act.

58. Defendants' actions described above, including its unauthorized and misleading use of the Ford Marks in commerce have caused substantial and irreparable injury to Ford and to the business and goodwill represented by the Ford Marks, thereby leaving Ford without an adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Ford respectfully prays for the following relief:

A. For entry of judgment in favor of Ford and against Defendants on each of Ford's claims for relief alleged in this Complaint;

B. For an order that Defendants, their agents, servants, employees, and any related persons or entities acting in concert with them, be preliminarily and permanently enjoined and restrained from unlawfully using, infringing, and/or counterfeiting the Ford Marks, or any marks confusingly similar to the Ford Marks;

C. For an order requiring Defendants to deliver for destruction any and all products in Defendants' possession that infringe on and/or counterfeit the Ford Marks;

D. For a determination that Defendants' acts of trademark infringement, counterfeiting, and unfair competition constitute cases of willful and exceptional infringement;

E. For actual damages as a result of Defendants' unlawful conduct, alleged above, as well as any profits that are attributable to the alleged conduct and are not taken into account in computing Ford's actual damages;

F. For maximum statutory damages available under the law to the extent that Ford elects statutory damages for any claim for relief;

G. For trebled, punitive, exemplary and/or enhanced damages to the fullest extent available under the law;

H. For reasonable attorneys' fees, all available costs, and pre- and post-judgment interest to the fullest extent available under the law;

1       I.     For any additional injunctive, specific performance, and/or other provisional remedies, as appropriate; and,

      J.     For such other and further relief as the Court deems just and proper.

DATED: August 8, 2022

SIDEMAN & BANCROFT LLP

By: _____
Zachary J. Alinder
Attorneys for Plaintiff
FORD MOTOR COMPANY

LAW OFFICES
SIDEMAN & BANCROFT LLP
ONE EMBARCADERO CENTER, 22ND FLOOR
SAN FRANCISCO, CALIFORNIA 94111-3711

11757-3\5007492      16      Case No. 2:22-CV-05552
COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38 and Civil Local Rule 38-1, Ford demands trial by jury on all issues so triable.

DATED: August 8, 2022

SIDEMAN & BANCROFT LLP

By: _____
Zachary J. Alinder
Attorneys for Plaintiff
FORD MOTOR COMPANY